UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Signs for Jesus; Bethal
Builders, LLC; and
Fabrizio Cusson

    v.                                              Civil No. 11-cv-101-LM

Town of Chichester and
The Chichester Planning Board

**O R D E R**

This case began with a seven-count complaint that included four claims invoking the United States Constitution (brought by means of 42 U.S.C. § 1983), and three claims based on the federal Religious Land Use and Institutionalized Persons Act ("RLUIPA").[1]  Substantively, the case concluded with a Consent Decree.  Before the court is plaintiffs' motion for costs and attorney's fees pursuant to 42 U.S.C. § 1988.  Defendants object.  For the reasons that follow, plaintiffs' motion is denied.

**Background**

In June of 2010, plaintiffs sought site-plan approval from the Chichester Planning Board ("Planning Board") for an

---

[1] Two of plaintiffs' federal constitutional claims also invoked the New Hampshire constitution.  In addition, plaintiffs brought an appeal under the aegis of N.H. Rev. Stat. Ann. § 477:15.

electronic message sign to be located near the intersection of Route 4 and Main Street/Horse Corner Road.  The purpose of the proposed sign was to display Christian Bible Scriptures.  The Planning Board denied site-plan approval.  Plaintiffs appealed to the Chichester Zoning Board of Adjustment ("ZBA"), which initially determined that the Chichester Zoning Ordinance prohibited electronic message signs.  Plaintiffs moved for rehearing, and the ZBA reversed its earlier decision, "holding that the zoning provision that putatively banned electronic message signs was not validly adopted and therefore could not be applied against Signs for Jesus."  Compl. ¶ 39.[2]  Accordingly, plaintiffs returned to the Planning Board for site-plan approval.

    Despite determining that plaintiffs had met all the objective requirements of the Chichester Site Plan Regulations, the Planning Board denied site-plan approval on February 9, 2011.  In early March, counsel for defendants notified counsel for plaintiffs that the Planning Board was intending to entertain a motion to reconsider its February 9 decision.  At

---

[2] The record does not include either the 2010 Planning Board and ZBA decisions or the submissions plaintiffs made to those boards.  Even as described in plaintiffs' complaint, however, the favorable decision they received from the ZBA does not appear to have been based upon either the First Amendment or RLUIPA.

its March 9 meeting, the Planning Board voted to reconsider plaintiffs' application at its April 7 meeting.

On March 7, plaintiffs filed their complaint in this case. In their complaint, plaintiffs asked the court to:

> a. Issue a temporary, preliminary and/or permanent injunction enjoining the Town of Chichester, its officers, agents, employees, attorneys and all other persons in active concert with it from enforcing its zoning ordinance and/or its site review regulations to prevent the plaintiffs from constructing a religious Signs for Jesus Bible sign on its property at 136 Dover Road in Chichester;
>
> b. Enter a declaratory judgment declaring that Chichester's prohibition on the Signs for Jesus sign is void and unconstitutional, as well as a violation of RLUIPA;
>
> c. Enter a declaratory judgment declaring Chichester's discretionary site plan review requirements for religious signs to be unconstitutional prior restraints;
>
> d. Enter a declaratory judgment declaring that the regulations and actions of the defendants with regard to the plaintiffs' application to replace a commercial sign with a Signs for Jesus Bible sign to constitute unlawful substantial burdens in violation of RLUIPA;
>
> e. Award compensatory, nominal, and punitive damages and grant the plaintiffs a "builder's remedy" to construct its sign in accordance with the submitted site plan for violation of the plaintiffs' constitutional and statutory rights;
>
> f. Award the plaintiffs their reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988, Funtown USA v. Conway, 129 N.H. 352 (1987), and other applicable law;

g. Issue a Certiori [sic] Order pursuant to RSA 677:15 to the Town of Chichester Planning Board ordering the Planning Board to file with the Court, with a copy to the petitioner's attorney, a certified copy of the complete record pertaining to the matter under appeal within thirty (30) days of the filing of this Complaint;

h. That the Court find and rule that pursuant to RSA 677:15, that the Planning Board acted unlawfully in denying the plaintiff's site plan application; and

i. Such other and further relief as may be just and equitable.

Compl., at 19-20.

On March 24, plaintiffs moved for preliminary injunctive relief. In support of their motion, plaintiffs asked the court to determine that they were likely to succeed on the merits of four claims:

> The Chichester Planning Board has applied its Site Plan Review Regulations so as to constitute an unconstitutional prior restraint on signs in violation of the First Amendment.
>
> The Chichester Planning Board applied its Site Review Regulations so as to violate the Free Speech Clause of the First Amendment.
>
> The Chichester Planning Board's arbitrary denial of site plan approval to replace a commercial sign with a Bible sign is a violation of the plaintiff's rights to free exercise of religion under both the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc [RLUIPA].
>
> The Planning Board's denial of Signs for Jesus's site plan was unreasonable and unlawful pursuant to RSA 677:15.

4

Pls.' Mem. of Law (doc. no. 5-1), at 4, 8, 11, 16.  Defendants objected to plaintiffs' request for injunctive relief on April 7.  Also on April 7, the Planning Board reconsidered its February 9 decision and approved plaintiffs' site plan, conditioned upon their submission of two state-issued permits.

On May 9, this court approved a Consent Decree, submitted jointly by the parties, that includes the following relevant provisions:

> On or about April 7, 2011, the [Planning] Board reconsidered its denial of the site plan application of the plaintiffs, and issued a full and final decision, which shall not be reversible, approving the site plan.
>
> The plaintiffs have secured a building permit from the Town of Chichester.
>
> The parties agree that there is no need for the Court to rule on the motion for a preliminary injunction as the Chichester Planning Board approved the site plan application of the plaintiffs.

Consent Decree (doc. no. 10) ¶¶ 5-7.  As the parties were unable to reach an agreement on costs and attorney's fees, the Consent Decree is silent on that issue.

## Legal Principles

In actions to enforce 42 U.S.C. § 1983 and RLUIPA, "the court, in its discretion, may allow the prevailing party . . . a

reasonable attorney's fee as a part of the costs." 42 U.S.C. § 1988(b). "[A] 'prevailing party' is one who has been awarded some relief by the court." Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603 (2001), partially superseded by statute, OPEN Government Act of 2007, Pub. L. 110-175, § 4, 121 Stat 2524, as recognized in Davis v. U.S. Dep't of Justice, 610 F.3d 750 (D.C. Cir. 2010).[3] That relief often takes the form of a judgment on the merits, but the Supreme Court has "held that settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees." Buckhannon, 532 U.S. at 604 (citing Maher v. Gagne, 448 U.S. 122 (1980)).

As the Court explained: "Although a consent decree does not always include an admission of liability by the defendant, it nonetheless is a court-ordered 'chang[e] [in] the legal relationship between [the plaintiff] and the defendant.' " Buckhannon, 532 U.S. at 604 (citing Maher, 448 U.S. at 126 n.8; quoting Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989)); see also Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 8 (1st Cir. 2011) ("To qualify as a

---

[3] To be clear, the OPEN Government Act superseded Buckhannon only with regard to fee awards under the Freedom of Information Act ("FOIA") and reinstated, for FOIA actions only, the "catalyst theory" for the recovery of fees that the Supreme Court had rejected in Buckhannon.

6

prevailing party, a litigant must show that a <u>material alteration of the parties' legal relationship has taken place as a result of the litigation</u>." (emphasis added)).  In <u>Maher</u>, the Court upheld an award of attorney's fees where the trial court had held "that respondent was the prevailing party within the meaning of § 1988 because, while not prevailing 'in every particular,' she had won 'substantially all of the relief originally sought in her complaint' in the consent decree."  448 U.S. at 127 (quoting <u>Gagne v. Maher</u>, 455 F. Supp. 1344, 1347 (D. Conn. 1978)).

## Discussion

In support of their claim for attorney's fees, plaintiffs point out that "[a]lthough this fee-shifting provision [<u>i.e.</u>, § 1988] is couched in permissive terminology, awards in favor of prevailing civil rights plaintiffs are virtually obligatory." <u>Gay Officers Action League v. Puerto Rico</u>, 247 F.3d 288, 293 (1st Cir. 2001) (citing <u>Stanton v. S. Berkshire Reg'l Sch. Dist.</u>, 197 F.3d 574, 576 (1st Cir. 1999); <u>Casa Marie Hogar Geriatrico, Inc. v. Rivera-Santos</u>, 38 F.3d 615, 619 (1st Cir. 1994); <u>Blanchard v. Bergeron</u>, 489 U.S. 87, 89 n.1 (1989)). Then, they devote the bulk of their memorandum to justifying their request for $38,382.50 in attorney's fees and $2,779.78 in

costs. Defendants argue that plaintiffs are not entitled to an award of attorney's fees because: (1) the settlement the parties negotiated did not provide for an award of attorney's fees, and by representing to defendants that the Consent Decree would eliminate the need for future litigation, plaintiffs waived any claim to attorney's fees they might otherwise have; (2) plaintiffs have failed to establish that they were prevailing parties; (3) plaintiffs' lawsuit was not ripe; and (4) the lawsuit played no part in the favorable decision plaintiffs received on their application to the Planning Board. Defendants also argue that plaintiffs' request for fees is abusive and that the amount plaintiffs seek is unreasonable. While defendants' arguments are not uniformly persuasive, and several appear to be erroneous, defendants have identified the relevant dispositive issues.

While plaintiffs now hold an irrevocable approval of their site-plan application (and a building permit for their sign), they are not prevailing parties for purposes of § 1988. Regarding what it takes to qualify as a prevailing party, "[i]f the plaintiff has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit,' the plaintiff has crossed the threshold to a fee award of some kind." Tex. Teachers, 489 U.S.

at 791-92 (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)). The Texas Teachers Court continued:

> The floor in this regard is provided by our decision in Hewitt v. Helms, 482 U.S. 755 (1987). As we noted there, "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." Id., at 760. Thus, at a minimum, to be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant. Id., at 760-761; Rhodes v. Stewart, 488 U.S. 1, 3-4, (1988). Beyond this absolute limitation, a technical victory may be so insignificant, and may be so near the situations addressed in Hewitt and Rhodes, as to be insufficient to support prevailing party status. . . . Where the plaintiff's success on a legal claim can be characterized as purely technical or de minimis, a district court would be justified in concluding that even the "generous formulation" we adopt today has not been satisfied. See Nadeau, 581 F.2d, at 279, n. 3; New York City Unemployed and Welfare Council v. Brezenoff, 742 F.2d 718, 724, n. 4 ([2d Cir.] 1984); Chicano Police Officer's Assn. v. Stover, 624 F.2d 127, 131 ([10th Cir.] 1980) ("Nuisance settlements, of course, should not give rise to a 'prevailing' plaintiff"). The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.

Tex. Teachers, 489 U.S. at 792-93 (emphasis added, parallel citations omitted). In Texas Teachers, the Court also observed that if the plaintiffs' only success had been a determination that a rule that had never been enforced against them was unconstitutional, such a minor victory, standing alone, "would not have rendered them 'prevailing parties' within the meaning

9

of § 1988." Id. at 792.  In Hewitt, the Court determined that a plaintiff who received "an interlocutory ruling that his complaint should not have been dismissed for failure to state a constitutional claim," 482 U.S. at 760, was not a prevailing party for purposes of a fee award under § 1988.  In Rhodes, the Court determined that two inmates who received a declaratory judgment that their prison's magazine subscription policy was unlawful were not prevailing parties where one had died and the other had been released from custody before the district court entered its favorable judgment, meaning that neither plaintiff gained any benefit from it.  488 U.S. at 3-4.

With the foregoing principles in mind, the court turns to the Consent Decree in this case and the relief afforded to plaintiffs by the Consent Decree.  In their memorandum of law in support of their request for attorney's fees and costs, plaintiffs state that "[o]n May 9, 2011, this Court approved a Consent Decree approving Signs for Jesus's sign and precluding the Town from seeking to reverse its approval."  Pls.' Mem. of Law (doc. no. 11-1), at 3.  As the record demonstrates, however, plaintiffs were granted site-plan approval by the Planning Board on April 7, more than a month before the Consent Decree was approved.  The Consent Decree, in fact, expressly states that the Planning Board, not the Consent Decree or the court, was the

10

source of plaintiffs' site-plan approval.  In their reply brief, plaintiffs sensibly back away from their earlier claim that they were awarded site-plan approval in the Consent Decree and limit their argument for prevailing-party status to this: "The Consent Decree materially changes the relationship between the parties as its prevents the Town from once again changing its decision." Pls.' Reply (doc. no. 18), at 3.  Under the circumstances of this case, that is not enough to make plaintiffs prevailing parties entitled to attorney's fees and costs.

The court begins by comparing the relief granted in the Consent Decree to the relief plaintiffs requested in their complaint.  See Tex. Teachers, 489 U.S. at 791-92.  In their complaint, plaintiffs requested injunctive relief, three items of declaratory relief, monetary damages, a "builder's remedy" to construct their proposed sign, a certiorari order, and a favorable ruling on their appeal of the ZBA's decision under state law.  While plaintiffs have received site-plan approval (and a building permit), the Consent Decree awarded them substantially none of the relief they sought in their complaint. The Planning Board approved plaintiffs' site plan a month before the Consent Decree became effective and, for its part, the

Consent Decree provided plaintiffs with no injunctive relief,[4] no declaratory relief,[5] no damages,[6] no certiorari order, and no determination regarding the merits of plaintiffs' appeal of the ZBA's decision.

What plaintiffs did get in the Consent Decree was a statement, approved by the court, that on April 7, 2011, the Planning Board "issued a full and final decision, which shall not be reversible, approving the site plan." Consent Decree ¶ 5. That statement is reasonably susceptible of two different interpretations. On the one hand, it could be construed as merely a memorialization of the Planning Board's April 7 decision. On the other hand, plaintiffs construe that provision as a bargained-for agreement, enforceable as a court order, barring the Planning Board from taking back the approval it

---

[4] The Consent Decree expressly provides that a ruling on plaintiffs' request for injunctive relief is unnecessary. Consent Decree ¶ 7.

[5] Even if the Consent Decree had granted plaintiffs the declaratory judgments they sought in their complaint, those judgments would have been no more valuable to them than the declaratory judgment in Rhodes was to the former inmate in that case, given that plaintiffs already had their site-plan approval by the time the court approved the Consent Decree.

[6] In their reply brief, plaintiffs acknowledge that their proposed draft consent decree would have given them damages, but in a provision that was not included in the final version. See Pls.' Reply, at 2.

granted on April 7.  Even construed in the manner most favorable to plaintiffs, the "shall not be reversible" provision in the Consent Decree was not a "material alteration of the legal relationship of the parties," Tex. Teachers, 489 U.S. at 792-93, sufficient to support an award of attorney's fees and costs.

On April 7, the Planning Board granted site-plan approval. According to plaintiffs, the history of their dealings with the Planning Board demonstrated that they "needed to have an enforceable agreement that the [Planning Board] would not change its mind again."  Pls.' Reply, at 4.  Thus, it is necessary to explore the legal basis for the Planning Board's ability to change its mind.

In 74 Cox St., LLC v. City of Nashua, 156 N.H. 228 (2007), the New Hampshire Supreme court held, as a matter of first impression, id. at 230, "that a ZBA has the inherent authority to reconsider a decision to deny a request for rehearing, upon its own motion . . . within the thirty-day appeal period established by RSA 677:4," id. at 233 (emphasis added).  While there is no guarantee that the New Hampshire Supreme Court would extend its holding in 74 Cox Street from ZBAs to Planning Boards, and from denials of requests for rehearing to approvals of site plans, this court will presume that 74 Cox Street would apply to the circumstances presented here.

Based on 74 Cox Street, and RSA 677:15, which provides a thirty-day appeal period for Planning Board decisions, plaintiffs in this case were at risk of sua sponte Planning Board reconsideration of its April 7 site-plan approval only until May 9, at the latest, which was the statutory deadline for appealing the April 7 decision.  See N.H. Super. Ct. R. 12(1). That is, once May 9 came and went, the Planning Board was, in all likelihood, without legal authority to reconsider its approval of plaintiffs' site plan.  Thus, its agreement not to do so in the Consent Decree, which was approved on May 9, falls well short of being a material change in the parties' legal relationship resulting from this litigation.  See Hutchinson, 636 F.3d at 8.  Rather, plaintiffs' victory, such as it is, was merely the sort of technical or de minimis success that is insufficient to establish prevailing-party status.  See Tex. Teachers, 489 U.S. at 792.  Thus, plaintiffs are not entitled to an award of attorney's fees and costs.

The court further notes that even if plaintiffs did qualify as prevailing parties, it is all but certain that they would be entitled to a substantially smaller award than they are seeking. For one thing, to the extent plaintiffs prevailed at all, they did not receive any of the relief they sought in their complaint, but only prevailed in securing a single, negligible

benefit (i.e., irreversibility of their site-plan approval during the thirty-day appeal period) in a short uncomplicated Consent Decree.  Therefore, they would be entitled, at most, to the relatively small amount they expended on attorney's fees to negotiate the irreversibility agreement described in the Consent Decree.  See Tex. Teachers, 489 U.S. at 789-90 (explaining that where plaintiff achieves only limited success, a "district court[ ] should exercise [its] equitable discretion . . . to arrive at a reasonable fee award, either by attempting to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff" (citations omitted)).

In addition, under § 1988, plaintiffs would be entitled only to fees expended to successfully resolve their constitutional and RLUIPA claims.  As noted above, plaintiffs have not provided any of the Planning Board or ZBA decisions from 2010, or the pleadings, if any, they submitted to those boards.  That, of course, makes it difficult to know how much of the fees generated in 2010 went toward legal work that, if successful, would be compensable under § 1988, as opposed to legal work that would not be compensable.  Attorney Tierney's billing records, however, tend to show that prior to the filing of this suit, at least some of his time was spent on matters

15

unrelated to the federal claims plaintiffs raised in this suit.

Finally, there is the question of the fees expended for legal work before the Planning Board and the ZBA. In New York Gaslight Club, Inc. v. Carey, the Supreme Court held that

> §§ 706(f) and 706(k) of Title VII authorize a federal-court action to recover an award of attorney's fees for work done by the prevailing complainant in state proceedings to which the complainant was referred pursuant to the provisions of Title VII.

447 U.S. 54, 71 (1980). But, in Webb v. Board of Education, 471 U.S. 234 (1985), the Court declined to extend Carey to allow a successful § 1983 plaintiff to recover attorney's fees "for the time spent in proceedings before the local School Board," id. at 236. So, based on Webb, Carey does not establish a blanket rule that fees for proceedings before administrative bodies are always compensable under § 1988 but, rather, stands for the more limited proposition that fees for representation before an administrative body may be recovered under § 1988 only when the administrative body and the district court address the same legal issues.

Here, it would appear that none of plaintiffs' attorney's fees related to proceedings before the Planning Board and the ZBA would be compensable under § 1983. Plaintiffs in this case, who went before the Planning Board and the ZBA to get approval for a sign, have more in common with the former teacher in Webb,

16

who went before the school board to get his job back than they have in common with the unsuccessful job applicant in Carey who was required to pursue her discrimination claim before the New York State Division of Human Rights before she could bring the same discrimination claim in a Title VII action in federal court.

In sum, even if plaintiffs did qualify as prevailing parties for purposes of § 1988, it appears that the attorney's fees and costs to which they would be entitled are only a small fraction of the amount they seek.

### Conclusion

Because plaintiffs do not qualify for prevailing-party status, they are not entitled to an award of attorney's fees and costs under § 1988. Accordingly, their motion for attorney's fees and costs, document no. 11, is denied.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

September 13, 2011

cc: Barton L. Mayer, Esq.
    Daniel J. Mullen, Esq.
    Michael J. Tierney, Esq.